**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 0:17-cv-61131**

THE SCHWARTZ E LIQUID INC.,
d/b/a "NAKED 100," a California
corporation,

Plaintiff,

v.

VAPE CENTRAL, LLC, a
Florida limited liability company,
VAPE LIFE, LLC, a Florida limited liability
company, and JOHN HAGGAIG. an
individual,

Defendants.

_______________________________________/

## COMPLAINT

Plaintiff The Schwartz E Liquid Inc., a California corporation (hereinafter "Naked" or "Plaintiff"), hereby sues Vape Central, LLC, a Florida limited liability company ("Vape Central"), Vape Life LLC ("Vape Life," and collectively with Vape Central the "Corporate Defendants"), and John Haggaig, an individual ("Haggaig, collectively with the Corporate Defendants, "Defendants") and state:

## INTRODUCTION

1. Naked is the owner of the trademark and other related intellectual property with respect to certain vapor liquid products that are marketed to adults in the United States and abroad. Defendants counterfeited Naked's products and sold them, both directly and indirectly, to the general public. This lawsuit seeks appropriate damages against Defendants under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act").

## JURISDICTION AND VENUE

2. This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"). Accordingly, this Court has federal question jurisbdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a) and (b). Venue in this district is proper under 28 U.S.C. § 1391(b). This Court has jurisdiction over the state-law claims asserted in this action pursuant to section 28 U.S.C. 1367(a).

3. Furthermore, this is a case involving damages of more than $75,000.00, exclusive of interests, legal fees and costs, Plaintiff is a company that resides in California and the Defendants all reside in the state of Florida, therefore this Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a).

4. This Court has personal jurisdiction over each Defendant because they each reside in Florida, which is where a significant portion of their illegal and wrongful conduct took place.

5. Venue is appropriate in this jurisdiction because the most significant portion of the misconduct that is the subject of this lawsuit took place in this District and the Defendants reside in this District.

## THE PARTIES

6. Plaintiff is a California corporation that develops and markets products that are related to the e-cigarette industry.

7. Vape Central and Vape Life are competitors to Plaintiff and they are based in Hallandale, Florida. Vape Life is believed to be the successor entity to Vape Central. Both Vape Central and Vape Life share a common managing member, John Haggaig, who is the principal of both entities.

8. Haggaig is believed to reside in Broward County, Florida.

## GENERAL ALLEGATIONS

9. Working jointly, Plaintiff has successfully developed, manufactured and marketed flavored "vaping" liquids referred to as "e-liquids" (the "Plaintiff's Products"). Plaintiff has distributed the Plaintiff's Products both directly to the general public and also through wholesale distribution channels.

10. Plaintiff developed the formulas and processes necessary to manufacture the Plaintiff's Products using ingredients and methods that Plaintiff kept strictly confidential.

11. Among the Plaintiff's Products are numerous varieties of products carrying the "Naked 100" brand name, which was developed as a premium product line using the highest production standards and design quality with respect to both health and consumer enjoyment (hereinafter the "Naked 100 Brands").

12. Plaintiff filed its registration of the brand name "Naked 100" for the purpose of protecting the Naked 100 Brands on December 29, 2015 with the United States Patent and Trademark Office.

13. Prior to and after that time, Plaintiff conspicuously used the Naked 100 Brands in commerce, with the knowledge of all Defendants, thereby creating an enforceable trademark in the e-liquid brand "Naked 100" (the "Naked 100 Mark").

14. Defendants manufactured counterfeit versions of products carrying the Naked 100 Brands (the "Counterfeit Products") in violation of Plaintiffs' various intellectual property rights.

15. The Counterfeit Products are of the same general appearance as Plaintiff's Products and are likely to cause confusion among prospective purchasers. The Counterfeit Products, which on information and belief, number well into the tens of thousands of units, are not authorized by Plaintiff or by any other authority with a right to so authorize.

16. The Counterfeit Products sold and to be sold by Defendants are of inferior quality. The sale of such Counterfeit Products has injured and is likely to injure the reputations of Plaintiffs, which are highly valuable and been developed by virtue of their honest and ethical business practices.

17. The aforesaid acts by Defendants are likely to cause the purchasing public to believe that the sale of such Counterfeit Products is authorized, sponsored or approved by Plaintiff and that such Counterfeit Products are subject to the same quality control and regulation required by Plaintiff, despite that not being true. It also injures Plaintiff in that Defendants do not have to pay any royalty for their unlawful manufacture and sales.

18. The damages resulting from Defendants manufacture and sale of the Counterfeit Products has caused hundreds of thousands of dollars in damages to Plaintiff, including but not limited to in the form of lost sales, diminution of the value of its brand name, lost royalties and loss of good will.

19. The aforesaid manufacture, distribution and sale of Counterfeit Products bearing the Naked 100 Mark constitutes a false designation of the source of origin of such goods and falsely describes and represents such merchandise. The use by Defendants and others of the Naked 100 Mark also constitutes an attempt to palm off and appropriate to themselves the Plaintiff's exclusive rights therein.

20. Upon information and belief, Defendants and others have and will continue to engage in such unauthorized activities in this state and elsewhere in interstate commerce and are likely to continue such activities into the future, thereby causing great injury to Plaintiffs, both in the form of direct damages in reduced sales and by damaging Plaintiffs' reputations.

21. On or about May 22, 2017, Plaintiff's counsel hand delivered a letter to Mr. Haggaig, in both his personal capacity and as the principal of the other Defendants. Plaintiff's counsel also emailed a copy of that letter to Mr. Haggaig's counsel. The May 22nd letter demanded that Defendants immediately cease selling the Counterfeit Products and also demanded an accounting of Defendants' purchase and sale of the Counterfeit Products.

22. On May 30, 2017, Defendant's counsel, Nathan Olken, responded to the May 22nd letter by stating that Mr. Olken had spoken with Mr. Haggaig who admitted that he had received the counterfeit products "from another individual," but that "he would stop selling them." Plaintiff's counsel has attempted to obtain clarification from Mr. Olken regarding the meaning of the representation and also an accounting of Defendants' infringing activities. As of the filing of this Complaint, no such clarification or accounting has been forthcoming.

23. Plaintiff has no adequate remedy at law and will suffer irreparable harm and damage as a result of the aforesaid acts, in an amount presently incalculable.

24. Plaintiff has hired counsel for the purpose of asserting the claims set forth herein and have agreed to pay its counsel a reasonable fee.

**COUNT I (Violation of the Lanham Act, Corporate Defendants)**

25. Plaintiff hereby re-alleges the allegations set forth in paragraphs 1 through 24 above as if fully set forth herein.

26. By reason of the foregoing, Plaintiff hereby asserts a claim against the Corporate Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of the Plaintiff's Products that carry the Naked 100 Brands.

**COUNT II (Infringement of Registered Trademark – Corporate Defendants)**

27. Plaintiff hereby re-alleges the allegations set forth in paragraphs 1 through 24 above as if fully set forth herein.

28. By reason of the foregoing, Plaintiff hereby asserts a claim against the Corporate Defendants for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Corporate Defendants' infringement of the Naked 100 Mark.

**COUNT III (Infringement of Registered Trademark--Haggaig)**

29. Plaintiffs hereby re-allege the allegations set forth in paragraphs 1 through 24 above as if fully set forth herein.

30. By reason of the foregoing, Plaintiff hereby asserts a claim against Haggaig for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Defendants' infringement of the Naked 100 Mark.

31. Haggaig knowingly caused entities that he controlled to violate 15 U.S.C. § 1114(b) by, among other things, (i) copying the Naked 100 Mark, (ii) manufacturing the Counterfeit Products, (iii) passing off the Counterfeit Products as genuine, and (iv) closing Vape Central and then reopening Vape Life in order to try to limit the liability for his wrongdoing.

32. By actively and knowingly causing Vape Central and Vape Life to engage, and to directly engage, the aforementioned infringing acts, Haggaig is personally liable for the trade mark infringement of Vape Central and Vape Life, as well as his own personal infringement.

**PRAYER'S FOR RELIEF**

WHEREFORE, Plaintiff , The Schartz E Liquid Inc. hereby seeks relief against Defendants as follows:

A. As to Counts I and II, that the Corporate Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: 1) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the name, trademark, or likeness of the Brands or any colorable variation or imitation thereof; and 2) representing that any products, merchandise or goods manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order.

B. As to all claims for relief, that this Court order the United States Marshal, the local and state police or sheriff, off duty officers of the same, authorized agents of Plaintiff, and/or any persons acting under their supervision to seize and impound any and all Counterfeit Products which the Defendants attempt to sell, distribute or hold for sale.

C. That Defendants deliver up for destruction any and all Counterfeit Products.

D. As to all claims for relief, that Defendants pay Plaintiff damages in an amount to be determined, including compensatory damages, statutory damages, where applicable, and punitive damages to redress Defendants' intentional or grossly negligent misconduct.

E. As to all claims for relief, that Plaintiff be awarded its costs, attorneys' fees and such other and further relief as the Court deems to be appropriate and just.

Respectfully submitted,

MATHEWS GIBERSON, LLP
Museum Plaza
200 S. Andrews Avenue. Ste. 601
Fort Lauderdale, FL 33301
Ph: 305-791-3331
Fax: 954-206-0677
/s/Guy F. Giberson
Guy F. Giberson
Florida Bar No. 627402
Primary E-mail: gfg@mathewsllp.com
Secondary E-mail: sussy@mathewsllp.com